STUART F. HILLS *vs.* A. ELIJAH HART ET AL., EXECUTORS.

First Judicial District, Hartford, May Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The burden of proving that a will was obtained, in whole or in part, by undue influence, rests upon the party who asserts it.

The relation of parent and child is naturally one of close personal confidence and trust, and therefore furnishes, in itself, no basis for an inference or presumption that a testamentary gift by a parent to a child was obtained by means of undue influence exerted by the legatee.

While it is conceivable that a testatrix in good health and possessing a quick, active mind, retentive memory, and sound and independent judgment, may be unduly influenced, such a conclusion must rest upon the safe foundation of material facts proven, and upon inferences which fairly and convincingly lead to that result; and therefore a verdict adverse to the will, which is based upon mere surmise, suspicion, or deductions from inconsequential facts and circumstances, will be set aside upon appeal.

The existence of undue influence may be shown either by direct proof, or by inferences from proven facts which logically and reasonably lead to that conclusion.

A will which represents the wishes of a testatrix of sound mind, and which disposes of her property as she desires, is her will and not another's. Under such circumstances the testatrix has done nothing contrary to her wishes, nor has her discretion or judgment been controlled or her free agency overcome. Proof of the mere fact that the favored legatee had, or might have, poisoned the mind of the testatrix against the contestant, in the absence of any evidence that such legatee ever spoke to the testatrix about her will or had

any knowledge of its contents, is not a sufficient basis for an inference of undue influence.

The evidence and claims of the parties in the present case reviewed, and the verdict of the jury in favor of the contestant set aside as manifestly against the evidence.

Argued May 7th—decided July 13th, 1914.

APPEAL from an order and decree of the Court of Probate for the district of Hartford approving and admitting to probate a certain written instrument as the last will and testament of Julia G. Hills of Hartford, deceased, taken to the Superior Court in Hartford County and tried to the jury before *Case, J.;* verdict and judgment in favor of the plaintiff, setting aside two clauses of the will, and appeal by the defendants. *Error and new trial ordered.*

*Joseph L. Barbour* and *Lewis Sperry,* for the appellants (defendants).

*William M. Maltbie* and *Albert C. Bill,* with whom was *Hugh M. Alcorn,* for the appellee (plaintiff).

WHEELER, J. Mrs. Hills died June 22d, 1912; her will was executed November 13th, 1911, and probated July 19th, 1912. She was a widow, sixty-five years of age, having three adult children, Louis, Stuart, and Mrs. Hinkley. The will gave to Mrs. Hinkley her personal and household effects and a savings-bank deposit of about $680; to Stuart $2,000; to a long-time domestic servant $1,000; and in the fifth paragraph it disposed of the residue, giving in the second clause two thirds thereof to Mrs. Hinkley, and in the third clause it disposed of the remaining one third, giving $1,500 to Louis and his wife and daughter, and the balance in trust, the income of which was to go to Louis for life, with remainder to his daughter.

The jury found that the third clause of the will and the second paragraph of the fifth clause of the will had been procured by the undue influence of Mr. and Mrs. Hinkley, and were not the will of Mrs. Hills. From the decree entered upon this verdict the defendant executors appeal.

In our discussion we shall consider in the main the facts which are conceded, and those most favorable to the plaintiff, which the jury might reasonably have found upon the evidence.

The burden of proving the issue of undue influence was upon the contestant. He alleged it; he must prove it by a fair preponderance of the evidence.

The fact that there existed a relation of personal confidence between Mrs. Hinkley and her mother raised no legal presumption of undue influence, and did not place upon her the burden of proving that the will had not been procured by undue influence as alleged. Confidence, close and continuing, should exist between parent and child. It is the child's privilege to anticipate some share of the parent's estate. He may use all fair and honest methods to secure his parent's confidence and obtain a share of his bounty. From such a relationship alone, the law will never presume confidence has been abused and undue influence exercised. *Lockwood* v. *Lockwood,* 80 Conn. 513, 523, 69 Atl. 8; *Mooney* v. *Mooney,* 80 Conn. 446, 452, 68 Atl. 985; *Dale's Appeal,* 57 Conn. 127, 144, 17 Atl. 757. The distinction between a legatee who is a child and one who is a stranger, being the religious adviser, business agent, attorney, or physician of the testatrix, is marked. The law casts the burden of showing the absence of undue influence upon the legatee holding such fiduciary relation; otherwise the burden of proving undue influence remains with the party alleging it.

Mrs. Hills was, at the time she executed her will on

November 11th, 1911, and long prior thereto, in good physical and mental health, and so continued until a few days of her death, which occurred June 22d, 1912. She was a woman of quick and active mind, of strong intelligence, fair education, broad information, widely traveled, keenly observant, of retentive memory, and deeply interested in all current events. She possessed good reasoning powers and reached her conclusions by a logical sequence of reasoning; she was a strong thinker, very independent in her judgments and positive in her opinions; she had had unusual business experience for a woman, and held religious views, liberal and catholic. She regulated her own life, dominated her household, and managed her business affairs with such sagacity, courage, and success that the competency her husband left her had more than doubled, although she had provided for her children and self generously. She had the legal right to make her own will as she pleased. Neither judge nor jury have the power to make one for her, even though they may think they can treat her family connections with greater justice. *Sturdevant's Appeal*, 71 Conn. 392, 397, 42 Atl. 70.

It is not inconceivable that a testatrix of this character, even in the strength of her vigor, may have been unduly influenced; it is, however, certain such a conclusion, so foreign to her true character, should not be reached upon surmise or suspicion, or inferences drawn from inconsequential facts, but should rest on the safe foundation of material facts proven, and inferences which fairly and convincingly lead to that conclusion.

The circumstances surrounding the making and execution of Mrs. Hills' will furnish no evidence whatever of undue influence. The will makes an unequal distribution among the children, yet one which is neither unnatural nor in dissonance with the testatrix's expressed intent. There were special reasons for

leaving Louis' share in trust; Mrs. Hinkley was an only daughter, who had always lived with her mother, and her mother had frequently declared her purpose of giving her the largest share of her estate; Stuart had inherited and still retained a share of his father's estate, and was capable of earning and did earn a fair living. The jury might have found from the testimony of Stuart, that sometime prior to January, 1911, a former will of Mrs. Hills existed, under which, assuming the estate was then as much as at the decease of Mrs. Hills, Mrs. Hinkley would have received about $27,000, and Stuart and Louis about $15,000 each. Under a former will, admittedly made in January, 1911, Stuart received $5,000; Louis and Mrs. Hinkley about $28,000 each. Under the will before us, Stuart received $2,000, Louis about $19,000, or $9,000 less than by the January will, and Mrs. Hinkley about $40,000, or $12,000 more than by the January will. If the verdict stands, Louis would get over $32,000, and $13,000 of this would be free from a trust, Mrs. Hinkley would get nearly $15,000, and Stuart would get over $13,000.

It is conceded that Mrs. Hills never departed from her settled purpose to leave the body of Louis' share in trust, and to give Mrs. Hinkley a larger share than either of the sons. The verdict reverses her intention and gives Louis over twice as much as Mrs. Hinkley, and gives him about $13,000 free from the trust. In the first will Stuart receives substantially the same share as Louis; in the January will he only receives a $5,000 bequest, and in the November will he receives only $2,000.

Were these changes in her disposition of her property due to a natural increase in her love for her daughter and a decrease in her feeling for Stuart, or were they due to other causes? The existence of undue influence may be shown by direct proof—and none such is here claimed—, or by inferences from proven facts which

logically and reasonably lead to such conclusion; and it is from such proof the contestant insists the jury might reasonably have drawn the inference of undue influence.

The ultimate question is, upon the evidence could the jury reasonably have drawn the inference of undue influence?

The contestant bases his claim of undue influence, in general, upon these considerations: That there existed on the part of Mrs. Hills toward her son Stuart so great love as to make him her favorite child; that this manifested itself in the will made prior to January, 1911, which gave him about one third of her estate; that her affection for him began to abate in the year 1909, and her association with him ceased in December, 1910, but that in reality her love for him never died; that there was no adequate cause in his conduct or in their relations to each other to account for her change in affection, or for the diminished share in her bounty shown by the wills of January and November, 1911; that Mr. and Mrs. Hinkley, living as they did with Mrs. Hills, had the fullest opportunity to have not only gained her confidence, but to have influenced her testamentary treatment of Stuart to the advantage of Mrs. Hinkley; that Mrs. Hinkley was of a hard and domineering character, and on several occasions indicated her control over her mother and her own purpose to bend her mother to her will; that both Mr. and Mrs. Hinkley were keenly alive to bettering their own financial prospects; that through advancing years Mrs. Hills must have become more or less dependent upon her daughter; that Mrs. Hinkley was a woman capable of intense feeling and loved her brother deeply, never became reconciled to his marriage, always disliked his wife, and toward the end of their association the relation between Mrs. Hinkley and Mrs. Stuart Hills reached a point of armed neutrality until in February,

1910, the estrangement, through a quarrel, developed into an open rupture of all association; that the root of the trouble lay in a feeling of jealousy engendered in her because of her brother's marriage; that Mrs. Hinkley was the instigator of the February quarrel and the one at fault; that Mrs. Hills' knowledge of it must have come through her, and that in consequence of it the relations between her brother Stuart's family and her mother's almost ceased, and her mother's feeling for Stuart began to change; that the cessation of all family relations ceased at Christmas, 1910, when Stuart returned the Christmas gifts sent by Mrs. Hills', Louis' and Mrs. Hinkley's families to Stuart and his children, because no present had been sent his wife; that the recital of the reasons for his course in returning the presents must have come to Mrs. Hills through Mrs. Hinkley, and could not have been fairly presented in view of the immediate making by Mrs. Hills of the January will; that on several occasions Mr. Hinkley had made false statements of Stuart to his mother, and after her decease had expressed deep regret at his course; that all the circumstances indicate Mr. and Mrs. Hinkley poisoned the mind of Mrs. Hills against Stuart, and as a consequence she determined to deprive him of the great part of her bounty as given him by the earliest will, and in November, 1911, as her prejudices grew, she further decreased his share.

Aside from the conduct of Mr. and Mrs. Hinkley toward Stuart in the last sickness of Mrs. Hills, and after her decease, and the inferences to be drawn from the demeanor of witnesses and the conduct of the appellees' case, these are the considerations from which the contestant maintains that the jury might reasonably have found undue influence on the part of Mr. and Mrs. Hinkley.

Assuming that the jury might have found the sub-

stantial elements of these considerations proven, it would still be necessary to inquire, where is there any evidence that Mrs. Hills was unduly influenced in making her will? If Mr. and Mrs. Hinkley had systematically sought to poison the mother's mind against her son and had succeeded, and under the influences of the prejudices so generated she made her will, it does not follow as an inference that the will was the product of their undue influence. If the will represented her wishes, and was such a disposition of her estate as she desired, and she was then of sound and disposing mind, it is her will and not another's. She has not done something against her will and contrary to her wishes. Her discretion and judgment have not been controlled, and her free agency has not been overcome. This is our test. *St. Leger's Appeal*, 34 Conn. 434, 442.

All the evidence points to the uncontradicted fact that the will of November, 1911, represented fairly and fully Mrs. Hills' desires and feelings at that time toward her children. She went about its making, as she did about all of her business matters, alone; she instructed her lawyer as to her desires, and she did not ask him for advice as to how she should dispose of her estate. Neither Mr. or Mrs. Hinkley were present at the interviews regarding the will, and, so far as this record shows, they never knew nor made a request or a suggestion about its contents, and never made a request of Mrs. Hills as to the disposition of her estate.

If they could be held responsible for having poisoned the mind of Mrs. Hills against Stuart, they cannot be found guilty of having controlled the provisions of her will, in the absence of proof that they had ever communicated with her about it, or she with them, and in the face of the fact that the will represented her feelings and wishes, and was made in their absence, and that they were and remained ignorant of its contents.

In addition to this, we do not think the evidence fairly susceptible of the inference that either Mr. or Mrs. Hinkley designedly sought to poison the mother's mind against the son. It was an unhappy family difference. The mother had changed in her feeling for her son. Its beginnings came through the family dislike for Stuart's wife. The February, 1910, difference between Mrs. Hinkley and Mrs. Stuart Hills—and the jury might very reasonably have found that Mrs. Hinkley was the one at fault at this time—greatly aggravated the strained relations. When Stuart returned the Christmas presents because his wife had been overlooked, his loyalty toward his wife deeply offended his mother, and was the occasion for a cessation of family relations between the families. It was not what Mrs. Hinkley told her mother of this incident, but the fact of the return of the presents which led to the breach between mother and son. The will of January, 1911, immediately followed. Mother and son failed to greet each other when they met. Each side claims the other was at fault; but it is clear the mother believed it was her son's fault, and she grieved greatly over it.

The testimony is abundant and unimpeachable that the November will did express Mrs. Hills' wishes and continued to express them to the last.

If the jury did find that Mrs. Hinkley had a motive for desiring a change in her mother's will, and found that she had abundant means and opportunity for influencing her mother, this is very far from furnishing evidence that the opportunity was used and used for an improper purpose.

All of the statements Mr. Hinkley is said to have made to Mrs. Hills of Stuart, and they appear to be confined to three subjects, were made quite a time before the breach between mother and son; the son sub-

sequently had an opportunity to explain them; two of the subjects were founded on fact; the relations between the mother and son continued, until long after, cordial and affectionate; and no change in her will was made until much later. Under these circumstances we regard the statements, if made, as of very little weight in tending to prove the undue influence charged.

There is no reasonable basis, when all the evidence is considered, for the argument that Mrs. Hills was dependent upon Mrs. Hinkley. The character and characteristics of Mrs. Hills show the reverse to be the truth.

So, too, it could not be reasonably found that Mrs. Hills was under the dominion of her daughter. She appears to have been as little likely to be a subject for undue influence as any reasoning woman, and to have possessed and retained a positive, even aggressive and independent mind.

To take up, one by one, and analyze in detail the several matters which the contestant asserts furnish ground for the inference of undue influence, would prolong the opinion to unseemly lengths. It is sufficient to say that we have examined the evidence with care, and are satisfied that the verdict is manifestly against its weight and should not stand. We reach this conclusion after giving due consideration to the court's refusal to set aside this verdict, and with a full appreciation of the work of the court throughout the presentation of the evidence, and in its admirable charge to the jury. We know of no substantial error which the record shows the trial court committed, save only in its failure to set aside the verdict.

There is error, the judgment is reversed and a new trial ordered.

In this opinion the other judges concurred.