ROBERT TAPPAN *vs.* HOMER KNOX ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and CORNELL, Js.

Argued June 14th—decided August 9th, 1932.

*Richardson Bronson,* for the appellant (defendant Homer Knox).

*Lazarus S. Heyman,* for the appellee (plaintiff).

HAINES, J. The plaintiff offered evidence to prove and claimed that he had proved that about seven o'clock in the evening of October 21st, 1928, he was returning to his home in Danbury from a farm where he was employed by the appellant, and was sitting on a seat back of the driver's seat in a Ford truck being driven by the appellant, the plaintiff facing toward the rear. The car entered the intersection of West and Division Streets and at that point made a "U" turn to the left, heading west, and parallel to the curb upon the right about six feet therefrom, when the appellant

turned the car to the right to go to the curb in front of the plaintiff's home. In doing so the car came into collision with a car driven by the defendant Abbott, pitching the plaintiff out of the truck and causing a concussion of the brain by striking on the hard pavement, as well as multiple other injuries, and rendering him unconscious; that he was removed to the first floor of the house and placed upon a sofa where he remained entirely unconscious for about twenty minutes, when he was helped to his own home on the third floor; that he there showed no sign of recognition of anyone and did not respond to any questions or conversation; that he was irrational during the night which followed and it was necessary to hold him in bed; that he vomited blood and suffered great pain and was thereafter confined to his bed and his home for a long period, and has been permanently injured both mentally and physically. The jury placed the blame for the collision and resulting injuries, upon the appellant and acquitted the defendant Abbott of negligence. The verdict was for $5900 as damages and was accepted by the court, the appellant making no motion to set it aside as excessive.

The appellant offered evidence in support of his plea that he was not in fact negligent, and, further, that some days after the accident the plaintiff, upon receipt of $25, executed and delivered a release in full of all claims and agreed not to sue the appellant because of the accident. The plaintiff in turn claimed the release was voidable by reason of circumstances disclosed by the evidence. Reference will be made to other portions of the finding.

One of the assignments of error in the charge, relates to negligence and the burden of proof. After explaining the law of burden of proof, the court added that, so far as the various affirmative allegations of negligence

were concerned, the plaintiff would be entitled to a verdict if he proved one or more of them as a substantial factor or proximate cause of the injuries. The appellant's objection to this is that the court did not refer to contributory negligence, which would defeat this right of recovery. If this isolated paragraph were the only source of information for the jury as to the law of contributory negligence, the objection would be well taken, but it was not, and as is so often the case where errors are assigned in particular sentences of a charge, it appears from reading the charge as a whole, that the objection is unwarranted. After thus considering the burden of proof, the court logically and clearly defined negligence and contributory negligence, saying, among other things: "A plaintiff may not recover in an action for negligence against a defendant without that plaintiff satisfies the tribunal before which his action is tried that he himself was free from contributory negligence." No fair criticism can be made of this presentation of the subject and we fail to see how the jury could have been in any way misled.

Errors are assigned in that portion of the charge dealing with the claimed prior written settlement and release containing a covenant not to sue. The appellant's evidence was that, accompanied by an adjuster for the insurance company which had issued the liability policy carried by him, he went to the plaintiff's house ten days after the accident and, believing that the guest statute was in force at the time of the accident, offered him $25 in full settlement of his claim, and seven days later, while he was still confined to his home, the plaintiff's signature was obtained by the appellant and a representative of the insurance company to the written release which was offered in evidence, and that they left with the plaintiff a draft for $25, but several days afterward were informed by the plain-

tiff that the claimed settlement was not acceptable and that the draft for $25 would be returned. The plaintiff's evidence, however, was that the $25 was represented by the appellant and the adjuster, at the first interview, to be a gift to him to apply on preliminary medical expenses; that it was further represented to the plaintiff and his family that the plaintiff, at the time of the accident, was a "guest" of the appellant and that as the latter had not been guilty of heedless or reckless disregard of the plaintiff's rights, the appellant was not liable; that the plaintiff's signature to this paper was procured by the appellant and the representative of the insurance company, while the plaintiff's wife and daughter were out of the room; that they were not consulted or asked to witness it, one of the witnesses whose name appears on the paper being a party who in fact was not present at all; that at this time the plaintiff was still suffering from concussion of the brain caused by the accident, was feeble in body and mentally incapable of understanding the purport of the matter; that the plaintiff did not read the paper and his signature was obtained while he was under the domination of the appellant, who had been his friend for a long time, and by "pressure, importunities, misrepresentations, and threats, which the plaintiff had not the courage, strength, or mentality to resist," and that he had in fact no intention to release his claim and would not have done so if he had had mental understanding of the purport of the paper, and that at the time of the trial plaintiff had no recollection of either interview or of signing the paper in question. The matter of the release thus became an important feature of the case and the charge of the court thereon is the basis for the assignments of error now considered.

The charge deals at length and in considerable detail

with this alleged settlement. Here again the true meaning and intent of the charge is not to be found in the particular sentences which are culled therefrom, but the entire statement of the court must be considered. The court said the real issue was whether a fraud was perpetrated upon the plaintiff, either with or without design on the part of the appellant and the adjuster. Then follows a definition of what was meant by fraud, misrepresentation by word or deed of material facts, either knowingly or innocently made, or a suppression of facts accomplishing an unconscionable advantage, especially where obtained by imposition, circumvention, surprise or undue influence over one unable by reason of age, infirmity, idiocy, mental or other incapacity, to take due care of and protect his rights and interest. Such bargains the court characterized as unconscionable, particularly where the consideration was entirely inadequate. The jury were told that if in their opinion this settlement and release was so secured, it was unconscionable and voidable. In a careful study of the entire statement, we can find no warrant for any claim of unfairness in the charge upon this subject. The questions of fact were throughout left to the jury for decision. Whether the release had been obtained under the circumstances claimed by the plaintiff, or under those claimed by the appellant, whether the plaintiff was or was not mentally capable of understanding what was being done, was properly and fairly left to the jury for decision. The court's own summary of its statement to them upon this point may well be quoted: "I think in connection with the settlement that was made, and the injuries that were sustained, and the liability under the law that existed at the time, the settlement was one that might be regarded as an unconscionable settlement, in that it was far from being adequate in meeting the damages

that were suffered. Now, you are not at all bound by any expression, as I have said to you, of my opinion. And it is not, gentlemen, a question here of the vindication of . . . anyone. We are concerned in the administration of justice and in justice between those litigants and their vindication lies in the justice that the court can administer and you are under no obligation to consider elements of that character. You are bound by your conscience and your oaths and your obligations to the State of Connecticut, and not to any litigant, be he humble or be he powerful, be he rich or be he poor. They all stand on an equal and level footing in our courts, and you will not let any considerations of that character influence your judgment, nor will you be influenced by reason of the fact that an insurance company is concerned here, for that is foreign to the question.' . . . You will not let considerations of that kind influence your judgment, either in finding that there was negligence, in that you will find there was a valid settlement, or there was not a valid settlement."

The plaintiff's evidence regarding the concussion of the brain was that it was severe and his mental capacity was affected thereby, while the appellant's evidence was that the concussion was slight. Two brief portions of the charge upon this feature of the case are pointed to as erroneous, the ground being that the court discussed only part of the evidence. The extent to which it should refer to the evidence under these circumstances was a matter for the sound discretion of the court, and reading the entire statement upon this point, we see no merit in the claims of error. *Morosini* v. *Davis*, 110 Conn. 358, 363, 148 Atl. 371.

The plaintiff claimed that one of the results of the accident was a femoral hernia. Upon this point there was medical testimony on both sides of the case. Error

is claimed in the charge of the court in this connection. The jury were told that if they reached the question of damages they would be required to consider the evidence regarding the hernia, and if they found from the evidence that it was the probable result of the accident it would be proper for them to take it into account in determining the amount of the damages. Continuing, the court said that they must not do so, however, if it was only a possible result rather than a probable one, because the court did not deal with possibilities, and damages are never based upon them. This is unexceptionable. The appellant asked the court, and the court refused, to charge that the question of hernia must be eliminated from the question of damages because there was no evidence that it had been caused by the accident. The finding shows that the evidence offered by the plaintiff was that "upon his first recollection of consciousness following the said collision he discovered a femoral hernia, which he did not have before the collision." We are asked to strike this from the record, and in the evidence offered in support of this request, Dr. Griffin's testimony is printed, to the effect that the plaintiff was "quite cloudy" for some weeks following the accident but the plaintiff had said he did not have the hernia before but did have it after the accident. There is not here any sufficient basis for striking out the finding and the court correctly treated a determination of the question upon this and other evidence as one of fact for the jury. The ruling upon the evidence of Dr. Stahl touching this matter was in no way prejudicial to the interest of the appellant.

It is assigned as error that the court failed to charge, as requested, that in the determination of the question of contributory negligence the jury should take into consideration the type of seat upon which the plaintiff was sitting, its position and the position of the plain-

tiff, his hold upon the seat and the violence or lack of violence of impact between the automobiles. The court dealt at length with the question of the plaintiff's contributory negligence. Specific reference was made to some of the facts disclosed by the evidence, the court saying, "among some of the facts you have bearing upon that question." Reference was made to the seat upon which the plaintiff was riding; that he was riding with his back to the driver and was holding to the arms of the seat. It was not incumbent upon the court to comment or refer to all of the evidence upon this point. The jury had all the evidence before them and it is to be presumed that they considered it all in arriving at their conclusion. There was no error or improper omission by the court in this regard.

Error is assigned for failure to charge as requested upon the question of the mental capacity of the plaintiff—that proof thereof and of undue influence should not rest upon surmise or suppositions or any inferences drawn from inconsequential facts, but upon material facts proved, and fair and convincing inferences therefrom. As matter of fact, however, the court did charge this in language of almost identical character and certainly of identical import.

Two assignments relate to the charge and the failure to charge upon the right of way of the appellant at the time of the accident. The plaintiff's evidence was that the appellant drove into the intersection and made a "U" turn and headed westerly in the direction from which he had come and then turned to the right to bring the car to the curb in front of the plaintiff's house; that while he was making the turn the Abbott car approached the intersection, and the collision occurred when the appellant's turn to the right was made. The appellant's evidence was that the collision occurred westerly of the intersection. From the

evidence thus furnished us it is impossible to say whether there is a conflict of fact between the parties, but it is apparent that the court instructed the jury fully and correctly as to the rights of way of the defendant parties in an intersection of streets. Upon the other hand, if the cars were found by the jury not to have been in the intersection at the time of the collision (and it is apparent from the remarks of the court that the location of the cars was left to the jury to determine), they were given proper directions as to the law governing the situation under those circumstances, such as maintaining a proper lookout by the appellant and the giving of a signal for turning and the duty of Abbott to pass left of the appellant. Again, reading the entire charge of the court upon these questions, we cannot say that the jury were either erroneously or inadequately instructed.

The plaintiff offered a certified copy of the report of the accident made by the appellant to the motor vehicle commissioner and it was admitted by the court. The appellant objected to its admission on the ground that it did not contradict in any particular the testimony of the appellant himself upon the witness stand. It was not a statement made by one not a party to the action, as in *Ezzo* v. *Geremiah,* 107 Conn. 670, 142 Atl. 461, and *Voegeli* v. *Waterbury Yellow Cab Co.,* 111 Conn. 407, 150 Atl. 303, but was that of the defendant himself. An admission by a party of a material fact, whether made in court or elsewhere, is admissible against him. *Hope* v. *Valente,* 86 Conn. 301, 307, 85 Atl. 541; *Smirnoff* v. *McNerney,* 112 Conn. 421, 422, 152 Atl. 399.

Error is assigned in the admission of certain evidence of Dr. Griffin regarding the hernia. Being asked his opinion as to whether it might have resulted from the accident, the question was objected to, but no rea-

son for the objection is stated in the record. The court admitted the question, and the doctor answered that it might have, although it would be impossible, he thought, to do more than speculate about it. There being no stated ground of objection to the question, we cannot see why it was not admissible or, if inadmissible, how it can be regarded as harmful.

The last assignment relates to a ruling on evidence, but the information furnished by the record is very meagre, making the exact situation difficult to understand. It appears that the appellant, called in his own behalf, was asked on cross-examination by counsel for the plaintiff, how he arrived at the injuries set forth in the accident report made to the commissioner of motor vehicles, but the question was not answered and was not pursued by counsel for the plaintiff. Upon redirect examination by his own counsel, the appellant was asked the same question. Plaintiff's counsel objected, but stated no ground of objection, nor did counsel for the appellant advance any ground for admission. The question was excluded by the court and the appellant excepted.

Without reference to the admissibility of this question upon direct examination, it is clear that the cross-examination had elicited no information upon the point because the question asked was not answered. If the question asked on redirect had been answered, it would not have rebutted anything brought out on the cross-examination. Under these circumstances the matter was one which rested in the discretion of the trial court, and as the record stands, we cannot say that that discretion was abused. *Mechanics Bank* v. *Woodward*, 73 Conn. 470, 47 Atl. 762. We may add that it is difficult to see from this record how the appellant could have been prejudiced by the exclusion of the question. The ruling is sustained.

It may fairly be said that our study of this record discloses a careful presentation of the entire case by counsel on both sides and a thorough and painstaking consideration by the court of the many questions involved, particularly in the charge. We are convinced that the rights of all parties were fully and impartially protected.

There is no error.

In this opinion the other judges concurred.