DAVID C. SAMELSON, ADMINISTRATOR (ESTATE OF BESSIE S. SAMELSON) *v.* HARPER'S FURS, INC.

BALDWIN, O'SULLIVAN, WYNNE, DALY and KING, JS.

Argued April 2—decided May 9, 1957

*Daniel H. Cotter,* with whom was *John J. Cotter,* for the appellant (plaintiff).

*John C. Flanagan,* for the appellee (defendant).

O'SULLIVAN, C. J. The plaintiff brought this action to hold the defendant liable as bailee for the loss of a valuable mink jacket owned by the plaintiff's decedent during her lifetime. The amended complaint is in two counts, the first sounding in contract and the second in negligence. The court found for the defendant on the latter and for the plaintiff on the former. Although the jacket was reasonably worth more than $2100, damages were assessed at but $100, and the plaintiff has appealed.

In certain assignments of error, the plaintiff has attacked the finding, claiming that many facts were found by the court without evidence to support them. Since these assignments are not even mentioned in the plaintiff's brief, we treat them as abandoned. *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 390, 94 A.2d 1; Maltbie, Conn. App. Proc. (2d Ed.) pp. 208, 415. Through another assignment of error the plaintiff seeks several additions to the finding. We dispose of this assignment by observing that even if the requested facts were added they would have no effect upon the result. *Bucchi* v. *Gleason,* 137 Conn. 25, 29, 74 A.2d 212; Maltbie, op. cit., p. 195.

The facts, as found by the court, are these: The defendant corporation is engaged in the business of selling, repairing and storing fur garments. The nominal plaintiff is the administrator of the estate of Bessie S. Samelson. The real plaintiff is an insurance company which, having paid to the plaintiff, under its policy, the full value of the mink jacket, is now pursuing whatever rights it may have against the defendant by way of subrogation.

Following a telephone call from the decedent, the defendant sent one of its employees named Fuller to her home on May 9, 1953, to pick up some furs which she wished to have placed in storage. At that time Fuller had been in the defendant's employ for five or six weeks. Part of his duties consisted in collecting furs from the defendant's customers and giving, in return, receipts containing various printed conditions under which the furs were accepted. The defendant kept a quantity of these receipt forms in a box in a storage room in the basement of its establishment. They were consecutively numbered and were to be used in consecutive order. On May 9, 1953, the current numbers were in the vicinity of No. 17000. Fuller had been instructed to have the customers set their own valuation on the furs. The rate charged for storage was based directly on that valuation. The higher the declaration, the greater was the charge. The valuation usually fixed by a customer who, like the decedent, had her own insurance on an article to be stored, was $100, because this minimized the cost of storage. When Fuller arrived at the home of the decedent, she turned over to him a mink jacket and a coat and muff of Persian lamb. He then gave her two separate receipts, retaining carbon duplicates of each. For the coat and muff, he utilized form No. 17120, which had been

given to him by the defendant when he was ordered to go to the decedent's home; for the jacket, he utilized form No. 18050, which he had previously purloined from the box in the storage room.

Upon the decedent's declaring the value of the mink jacket to be $100, Fuller wrote that amount on the receipt form, as well as the date, type of garment and the $3 charge, each entry being written at the appropriate place. The decedent then signed the receipt. Immediately above her signature appears the following provision in bold print: "For any changes in valuation or repairs notification must be received within five days. I acknowledge and accept the charges as above subject to conditions on reverse side." Condition 11, in smaller print on the reverse side of the receipt, reads: "Storage and insurance charges are based upon valuation herein declared by the depositor and amount recoverable for loss of or damage to the article shall not exceed its actual value or the cost of repair or replacement with materials of like kind and quality or the depositor's valuation appearing in this receipt, whichever one of these amounts is least." The decedent did not, within the five days, exercise her right to alter the valuation she had placed on the jacket. Fuller failed to deliver the mink jacket and the duplicate of the receipt for it to the defendant. He stole the jacket and disappeared. Since then, he has not been heard of. On October 6, 1953, the decedent's daughter presented to the defendant the original receipt for the jacket. The defendant was unable to produce the jacket, which was worth $2155. This amount was paid to the estate of the decedent by the company issuing the personal insurance policy which she had previously purchased. During the period Fuller was employed by the defendant, he

had done nothing to arouse suspicion. Prior to May 9, 1953, he had not failed to turn over to the defendant the garments entrusted to him, nor had he given any overt indication of a dishonest inclination.

The court decided that the defendant was not negligent and found the issues for it under the second count. On the other hand, the court concluded that the defendant had broken its contract and awarded to the plaintiff damages of $100 under the first count.

The negotiations between the decedent and the authorized agent of the defendant culminated in an express contract. The terms of the contract included the provisions in the receipt which were partly printed and partly written in, the latter being data furnished by the decedent concerning the type and valuation of the garment about to be surrendered to Fuller. Since the decedent carried ample insurance to protect her against loss, it was a natural thing for her to declare the relatively nominal value of $100 on the jacket, because she thereby avoided paying a higher charge for storage. Thus she entered voluntarily into the contract with full knowledge that, pursuant to the provisions of condition 11, quoted above, the defendant was in no event to be liable for anything in excess of the amount which she had herself fixed and agreed to.

Although the contract was express, the law attached to it certain implied obligations of a bailee. *Douglass* v. *Hart,* 103 Conn. 685, 688, 131 A. 401. For example, the bailee was required to redeliver the jacket upon demand. Being unable to do so, the defendant failed in its obligation, and the court was correct in holding it liable under the first count and in awarding as damages the amount previously agreed on. See *Beaudette & Graham* v. *Tator,* 107

Conn. 712, 715, 142 A. 458; *Broderick* v. *Torkomian,*
107 Conn. 99, 100, 139 A. 506. There is no merit to
the contention urged upon us by the plaintiff that
the limitation placed by the parties on the extent of
the defendant's liability for breach of contract was
contrary to public policy. Ordinarily, the parties
to a bailment may by special agreement reduce the
contractual liability of the bailee. See cases cited
in 6 Am. Jur. 302, § 184.

As previously pointed out, the plaintiff also sued
in tort. On that count the court found the issues for
the defendant. The error claimed by the plaintiff
on this phase of the case is that, after having proved
delivery of the jacket to Fuller and the subsequent
inability of the defendant to produce it, he, the plain-
tiff, was precluded by the court from relying on a
presumption of negligence on the defendant's part.
This claim is futile under the circumstances of this
case. Even if the negligence of the defendant had
been proven, the most that the plaintiff could re-
cover under the second count would be $100. This
was the value placed by the decedent upon the jacket
and the amount properly awarded by the court under
the first count. *Beaudette & Graham* v. *Tator,* supra;
*Broderick* v. *Torkomian,* supra. The limitation thus
agreed to in a contract fairly obtained, the limita-
tion being based upon the consideration of a re-
duced rate for storage, was neither arbitrary nor,
as previously pointed out, contrary to public policy.
*Coupland* v. *Housatonic R. Co.,* 61 Conn. 531, 545,
23 A. 870.

There is no error.

In this opinion the other judges concurred.