[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above mentioned matter was initiated by two brothers against their sister on or about March 1, 1992. The dispute centers around the conveyance of their mother's home which had been the subject of a Declaration of Trust wherein her three children were named equal beneficiaries with the mother, Mary Dobrynski being Trustee and the son Gerald was named successor trustee. This action was brought in three CT Page 2660 counts.
The trial of the case revealed quickly the deep division within the family. Dr. William Stephan, Mrs. Przech's personal physician treated her mother from the time she left the family homestead in November, 1989 until her death on February 14, 1990. Both Dr. Stephan and her previous physician had diagnosed Mrs. Dobrynski, who was physically in good health, as suffering from senile dementia. During the time she lived with her daughter, Mrs. Przech, she was continuously receiving anti-psychotic, anti-depressant and anti-anxiety medication prescribed by Dr. Stephan. Dr. Stephan, who was Mrs. Przech's personal physician as well as treating Mrs. Dobrynski, reluctantly expressed the opinion that as of January 29, 1990, when the deed in question was executed, Mrs. Dobrynski was not mentally competent to execute a deed. Atty. John Caruso, who has many years experience at the bar, testified that he conversed with Mrs. Dobrynski at length on his first meeting and was satisfied that she was competent to execute the deed in question on January 29, 1990. Both professionals were forthright competent and credible.
Other than the two professionals (doctor and lawyer) the only other evidence in the case came from family members, Gerald Dobrynski, Mrs. Przech, her husband, and Edward Dobrynski's son, Jefferey, who was estranged from his father and sat with the Przechs throughout. Although there was testimony that Mrs. Dobrynski had numerous friends and neighbors and a housekeeper who lived with her during the last two weeks of her life, neither side chose to bring any of these people before the court. Both sides seemed to be very selective in what they remembered and offered only stereotypes of the mother's condition which they believed were supportive of their positions. There was considerable evasion on cross-examination. Neither side was particularly open with the court. In short, the court concluded that all the witnesses were deliberately picking and choosing what they would share with the court and were deliberately withholding information that was available and pertinent.
Both Gerald Dobrynski and his sister, Mrs. Przech, testified that an incident occurred which resulted in Mrs. Przech's attacking her brother and assaulting him with her fists. Gerald indicated that this occurred about the time his mother moved out of her house and went to live with his sister in November 1989. Mrs. Przech testified that the event occurred some three years earlier. Obviously, one of the witnesses was being less than candid with the court. This was merely one example of a course of conduct that lead the court to conclude that the parties seemed more interested in carrying on a family CT Page 2661 feud than in sharing with the court. Therefore, the court will have to do what it can with what it was given.
The court finds the following facts. Mary Dobrynski, the mother, in the fall of 1989 had been living alone in the family homestead for about 12 years following the death of her husband. Her three children each participated in various ways in her care and emotional support with Gerald and his sister, Mrs. Przech, being the most active. Gerald made several suggestions as to ways of shoring up his mother's care as it was apparent that she was having considerable difficulty with maintaining herself at home. Mrs. Przech at or about the same time became very upset with Gerald and attacked him physically. Shortly thereafter, with little or no notice, she unilaterally took her mother out of the family home and moved her into her own home. Mrs. Dobrynski remained with her daughter for a period of about three months and was returned to the family homestead within a day or two after executing the papers to revoke the trust and convey the property to her daughter Mrs. Przech. It is undisputed that Mrs. Dobrynski was suffering from senile dementia, having been so diagnosed by two physicians. Dr. Stephan, Mrs. Przech's physician, was treating Mrs. Dobrynski with anti-depressants, anti-anxiety and anti-psychotic medication during the three months she was living with Mrs. Przech. Dr. Stephan was of the opinion that she was not mentally competent to execute a deed but unfortunately Mrs. Przech withheld all of this information from the attorney she asked to execute the deeds.
There was ample evidence from which the court can and does conclude that Mrs. Przech was worried about the expenses of providing for her mother's future care. Whatever the motive may have been it is clear that during the 3 months Mrs. Dobrynski lived with her daughter she had almost no contact with her sons, one of whom, Gerald, was normally in almost daily contact with her. During the time she was in Mrs. Przech's home, Gerald saw his mother once for a few hours and had no telephone contact with her. She was anxious to return to her own home and did so almost immediately after deeding her home to Lois. It is clear that at the time she did this she was in need of 24 hour per day care due primarily to her mental as opposed to her physical condition.
The major thrust of plaintiff's claim is of undue influence.
 "Undue influence is the exercise of sufficient control over a person, whose acts are brought into question, in an attempt to destroy free agency and constrain CT Page 2662 him to do something other than he would do under normal control. Reynolds v. Molitor, 184 Conn. 526, 528, 440 A.2d 192 (1981). `It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating influence.'" Pickam v. Putnam, 6 Conn. App. 271, 175.
In this case, Mrs. Dobrynski was 85 years of age and until her daughter, the defendant, took her from her home and isolated her from other family members for a period of three months she had lived alone. During this period, Mrs. Przech, the daughter, became concerned about the costs of convalescent care and took her mother to a lawyer and had the property conveyed to herself. Mrs. Dobrynski was anxious to return to her own home and coincidentally did so within a day or two of the conveyance to Mrs. Przech. It is not at all unlikely that an elderly woman suffering from senile dementia and having prescriptions for anti-psychotic drugs; anti-depressant drugs and anti-anxiety drugs would be an easy person to influence. All of this information was withheld from the lawyer who was engaged to perfect the desired conveyance.
It has been held that "the rule which disperses with the necessity of direct proof of undue influence, does not relieve the contestant from the burden of laying a `safe foundation of material facts proven, and inferences which fairly and convincingly lead to that conclusion.'" Lee v. Horrigan,140 Conn. 232, 238 (1953) quoting Hills v. Hart, 88 Conn. 394, 397
(1914). Applying that standard of proof the court finds it to have been proven by clear and convincing evidence that Mrs. Przech exercised undue influence over her mother. Her concern over the expenses of convalescent care led her to assert her control over her mother and get her to turn over her house to pay the expenses of the convalescence.
The court finds that in effect the transfer from Mrs. Dobrynski was null and void as it was procured by undue influence and was not her own free act and deed. The court, therefore, finds for the plaintiffs on the first count and treats the subsequent counts as having been abandoned. In the event that counsel believes that the form of judgment needs to be modified to carry out the intent of the judgment he may file a motion to modify within 10 days from the receipt of judgment.
WILLIAM M. SHAUGHNESSY, JR. JUDGE, SUPERIOR COURT CT Page 2663