JULIA V. GRIFFIN *v.* NATIONWIDE MOVING AND STORAGE COMPANY, INC.

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued April 2—decision released June 22, 1982

*Claudia M. Sklar,* with whom were *Randy A. Kirsch,* and, on the brief, *Louis F. Green,* for the appellant (defendant).

*John J. O'Neil, Jr.,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This case raises issues arising out of the bailor-bailee relationship of the parties. On October 26, 1953, the plaintiff Julia Griffin delivered certain goods to the defendant Nationwide Moving and Storage Company, Inc. to be stored, for a valuable consideration, in the defendant's warehouse. The defendant placed and kept these goods in its warehouse located on Donald Street in Hartford.[1] In May 1972, the defendant

---

[1] In its brief the defendant argues that the trial court found, against the evidence, that the plaintiff's property was stored at the defendant's warehouse on Donald Street in Hartford rather than in another warehouse on Center Street in Hartford also owned by the defendant. This claim is without merit because, in its answer the defendant admitted, without qualification or later amendment, the paragraph of the complaint which alleged "[t]he Defendant

wrote to the plaintiff stating that it was pleased
to announce that "your goods will be safely stored
in our new 54,000 square foot warehouse. . . . The
new address will be 100 Peters Road, Bloomfield,
Connecticut."[2] That letter also informed her that
the monthly storage rate was being increased. On
or about August 1, 1973, the plaintiff made demand
upon the defendant for the return of her property
stored with the defendant and was informed that
the property had been destroyed in a fire which
had also destroyed the Donald Street warehouse.[3]
Thereafter, the plaintiff brought this action to
recover the value of the goods. From the judgment
awarding damages to the plaintiff, the defendant
has appealed.

On appeal, the defendant claims that the court
erred: (1) in concluding that the defendant failed
to rebut the presumption of negligence arising from

placed and kept said goods in a Warehouse owned by it located at
9-11 Donald Street in Hartford." This judicial admission was con-
clusive on the defendant. This matter was not in issue and it
was not even necessary to introduce evidence on that allegation.
*Rodearmel* v. *Rodearmel,* 173 Conn. 273, 275, 377 A.2d 260 (1977);
*Lutkus* v. *Kelly,* 170 Conn. 252, 257, 365 A.2d 816 (1976); *Jones
Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 199, 286 A.2d 308 (1971).

[2] This letter in full stated the following: "Dear Mrs. Griffin:
The ever increasing costs of taxes, labor, and building maintenance
have necessitated a revision in our storage rates. As of May 26,
1972 the rate for your account will be $15.00 per month.

"At this same time we are pleased to announce that your goods
will be safely stored in our new 54,000 square foot warehouse. This
is Connecticut's newest, most modern, warehouse facility and includes
palletized storage.

"The new address will be 100 Peters Road, Bloomfield, Connecticut.
Phone—(203) 243-9555.

"Very truly yours,

"Nationwide Moving & Storage Co., Inc.

"BERNIE PEARLMAN [signed]

"Bernie Pearlman, President"

[3] The fire which destroyed the Donald Street warehouse took place
on July 16, 1973.

its failure to deliver the bailed property to the plaintiff upon her demand; (2) in concluding that certain provisions on the warehouse receipt given to the plaintiff did not validly limit the defendant's liability to the plaintiff; and (3) in determining the amount of damages awarded to the plaintiff.

We turn first to the defendant's claim that the trial court erred in concluding that the defendant failed to rebut the presumption of negligence arising from its failure to redeliver the bailed property to the plaintiff upon her demand. The defendant argues that while the court applied the correct law, it applied it to the evidence in a manner that was "not consistent with the established precedent." It also maintains that the presumption of negligence should not have benefited the plaintiff, upon the defendant's proof "of the actual circumstances of the loss, the human conduct, if any, which materially contributed to the loss, and the precautions taken to prevent the loss." See *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 225, 215 A.2d 123 (1965); *Aetna Casualty & Surety Co.* v. *Poppel & Sons Service Station, Inc.,* 142 Conn. 598, 603, 115 A.2d 655 (1955); *Leake & Nelson Co.* v. *W. J. Megin, Inc.,* 142 Conn. 99, 102–103, 111 A.2d 559 (1955); *Frissell* v. *John W. Rogers, Inc.,* 141 Conn. 308, 312, 106 A.2d 162 (1954). We conclude that the trial court correctly applied the law to the evidence.[4]

It is undisputed that the relationship between the parties is that of bailor and bailee. "The failure

[4] In its brief on the first issue, the defendant points out claims of error stating that it "offered testimony to the effect . . ." and that it "presented evidence that . . . ." "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975); see *Capozzi* v. *Luciano,* 174 Conn. 170, 172, 384 A.2d 359 (1978); *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 222, 215 A.2d 123 (1965).

of a bailee to return goods delivered to him raises a presumption that their nonproduction is due to his negligence. *Dejon* v. *Smedley Co.,* 108 Conn. 659, 667, 144 A. 473 [1929]." *Frissell* v. *John W. Rogers, Inc.,* supra, 310; see *Barnett Motor Transportation Co.* v. *Cummins Diesel Engines of Connecticut, Inc.,* 162 Conn. 59, 63, 291 A.2d 234 (1971); *National Broadcasting Co.* v. *Rose,* supra, 225. " 'This presumption prevails unless and until the bailee proves the actual circumstances involved in the damaging of the property. If those circumstances are proved, then the burden is upon the bailor to satisfy the court that the bailee's conduct in the matter constituted negligence. *Murray* v. *Paramount Petroleum & Products Co.,* 101 Conn. 238, 242, 125 A. 617 [1924]; *O'Dea* v. *Amodeo,* 118 Conn. 58, 63, 170 A. 486 [1934]. The circumstances which the bailee must prove must be something more than those indicating the immediate cause of the damage. The proof must go so far as to establish what, if any, human conduct materially contributed to that immediate cause. *Frissell* v. *John W. Rogers, Inc.,* [supra, 312].' *Leake & Nelson Co.* v. *W. J. Megin, Inc.,* [supra, 102]. ' "The isolated fact of destruction by fire or of loss by theft rebuts nothing. The bailee must prove something more if he is to overcome the presumption. He must prove the actual circumstances connected with the origin of the fire or the theft, and these include the precautions taken to prevent the loss." *Frissell* v. *John W. Rogers, Inc.,* [supra, 311].' *Aetna Casualty & Surety Co.* v. *Poppel & Sons Service Station, Inc.,* [supra, 604]." *National Broadcasting Co.* v. *Rose,* supra, 225. In *Barnett Motor Transportation,* we held that the presumption in favor of the bailor continues "until the bailee not only produces *substantial contravening evidence*

but proves the actual circumstances involved in the loss of the property." (Emphasis added.) *Barnett Motor Transportation Co.* v. *Cummins Diesel Engines of Connecticut, Inc.,* supra, 64. Whether the bailee has proved the actual circumstances of the loss and rebutted the presumption of negligence in that the bailee has taken reasonable precautions under the circumstances is a question of fact for the trier. *Barnett Motor Transportation Co.* v. *Cummins Diesel Engines of Connecticut, Inc.,* supra; *Lissie* v. *Southern New England Telephone Co.,* 33 Conn. Sup. 540, 545, 359 A.2d 187 (1976).[5]

The defendant's proof of the mere fact of destruction of the plaintiff's goods by fire rebutted nothing. See *National Broadcasting Co.* v. *Rose,* supra, 225. The facts, as found by the court, demonstrate that the defendant did not prove the actual circumstances of *the* fire which destroyed the warehouse in which the plaintiff's goods were stored. The court found that the defendant kept the plaintiff's goods in a warehouse which had been the scene of previous fires and which was located in an area that had been experiencing considerable civil unrest for more than a year after it notified the plaintiff that her goods would be moved to a new warehouse in Bloomfield.[6] At best, the defendant's evidence about the cause of the fire which destroyed the

---

[5] While the date of this transaction removes it from the ambit of the provisions of article 7 of the Uniform Commercial Code, the relevant code section embodies the same test. See General Statutes § 42a-7-403 (1) (b).

[6] When asked about the origin of the fire, the defendant's vice president, who was the only witness for the defendant, testified that "[w]e had problems with riots for one straight year with both our warehouses in Hartford," and that there were "numerous fires in that building [Center Street warehouse]."

plaintiff's goods was vague.[7]  The defendant's vice president testified that the Donald Street warehouse was destroyed by fire.  He was then asked by his attorney when it was so destroyed and he answered:  "Well, I shouldn't say destroyed by fire.  We had fires and robberies in the Donald Street warehouse up until the day we physically moved out.  Then it was completely destroyed after we left, which was a vacant building."[8]  The defendant's evidence on this issue, even if credited, hardly proved the actual circumstances of the loss so as to rebut the presumption of negligence under our cases.  Having recognized the safety problem in the Hartford location by arranging for a new warehouse in Bloomfield, the defendant did not take the precaution of actually moving the plaintiff's goods to that location.

The defendant next claims that the trial court erred in concluding that certain provisions on the warehouse receipt given to the plaintiff at the time of the bailment did not validly limit its liability to her.  Specifically, it argues that the work order and the warehouse receipt, both of which the plaintiff received,[9] contained language which limited its

---

[7] At one point the defendant's vice president said that "Mrs. Griffin's goods were burned *or stolen*."  (Emphasis added.)

[8] Immediately after this, the following took place:  "The Court: When did you move out?

"The Witness:  I believe—don't hold me to this.  I think in 1972.

"The Court:  Okay."

There was in evidence at the trial a letter from the Fire Marshal of the city of Hartford which stated in part that "on July 16, 1973 . . . this [Hartford Fire] Department responded to a fire call at 9-11 Donald Street, Hartford, Connecticut.  The cause of this alarm was Arson—*Vacant Warehouse.* . . ."  (Emphasis added.)

[9] While she received both, we note that her signature appears only on the work order.

liability for loss or damage of the goods stored.[10] The defendant claims that the trial court erred in finding that because the plaintiff was unaware of the limitation of liability clauses on the work order and the warehouse receipt, these provisions did not become part of the bailment contract between the parties. It further claims that, under the circumstances, the plaintiff should have been

---

[10] The work order, which was an exhibit in evidence and which was signed by the plaintiff when she turned the goods over to the defendant in 1953, contains the following language at the bottom thereof and below her signature: "ACCEPTED SUBJECT TO TERMS AND CONDITIONS OF UNIFORM MOTOR CARRIERS BILL OF LADING.

RESPONSIBILITY OF WAREHOUSE. The responsibility of the warehouse is defined by the laws of the state.

All goods are stored at owner's risk of loss or damage by civil or military authority or insurrection, riot, strikes, enemies of the government, sprinkled, radiator or water pipe leakage, flood, wind, storm, fire, moth, corruption, depredation of rats, mice or vermin, change of temperature, or by any cause beyond the control of the warehouse.

The warehouse will assume no responsibility for concealed damage, leakage of liquids, or for losses in weight by reason of defective or insufficient containers whether occurring when goods are on storage or being handled nor for failure to detect or remedy the same."

The provisions of the warehouse receipt, which was in evidence but was not signed by the plaintiff, state: "7 The above named Depositor declares that the value of any article, piece or package including the contents thereof, packed, handled, carted or stored in this lot, or later received for the account of same Depositor, does not exceed the sum of Thirty Cents (30c) per lb. upon which valuation the rate is based, and the liability of the Company for any causes which would make it liable in case of loss or damage, while goods are in its possession, shall not exceed the sum so declared unless the owner or representative fixes a greater value and agrees to pay an additional charge of 25 cents per One Hundred Dollars ($100.00), per month thereon."

Whether these clauses or provisions are "conspicuous" as printed is not immediately before us as both documents predate the enactment, in 1959, of the Uniform Commercial Code which does define "conspicuous." See General Statutes § 42a-1-201 (10); see also *Hartford Federal Savings & Loan Assn.* v. *Green*, 36 Conn. Sup. 506, 412 A.2d 709 (1979).

deemed to have assented to the limitation of liability provisions which were part of the bailment contract.

The law does not favor contract provisions which relieve a person from his own negligence. See generally 2 Restatement (Second), Contracts § 195, comment b; 17 Am. Jur. 2d, Contracts §§ 188, 189; 78 Am. Jur. 2d, Warehouses § 232; 8 Am. Jur. 2d, Bailments §§ 139–141. Such provisions, however, have been upheld under proper circumstances. See, e.g., *Malone* v. *Santora,* 135 Conn. 286, 293, 64 A.2d 51 (1949); *Willard Van Dyke Productions, Inc.* v. *Eastman Kodak Co.,* 12 N.Y.2d 301, 304, 189 N.E.2d 693 (1963) (involving contract clause limiting liability in processing film); *Neece* v. *Richmond Greyhound Lines, Inc.,* 246 N.C. 547, 99 S.E.2d 756 (1957); see also 68 A.L.R.2d 1341. Parties to a bailment may generally provide by their contract of bailment for relief from liability of the bailee for loss or damages.[11] *Samelson* v. *Harper's Furs, Inc.,* 144 Conn. 368, 373, 131 A.2d 827 (1957); see *Malone* v. *Santora,* supra; *Carter* v. *Reichlin Furriers,* 34 Conn. Sup. 661, 664–65, 386 A.2d 647 (1977); 8 Am. Jur. 2d, Bailments §§ 139, 142; 17 C.J.S., Contracts § 262. We have held that the right of a bailee to limit his liability by special contract does not extend to relieve him wholly against his own negligence, for to do so would be against public policy. *Malone* v. *Santora,* supra; see also *New England Fruit & Produce Co.* v. *Hines,* 97 Conn. 225, 234, 116 A. 243 (1922).

---

[11] General Statutes § 42a-7-204 (2), which is part of the Uniform Commercial Code adopted in 1959, some years after the receipt was given by the defendant to the plaintiff, concerns the contractual limitation of a warehouseman's liability and has been held to be "merely declaratory of the common law of this state." See *Carter* v. *Reichlin Furriers,* 34 Conn. Sup. 661, 665, 386 A.2d 647 (1977).

Whether a particular provision forms part of a contract is ordinarily a factual question for the trier. *Carter* v. *Reichlin Furriers,* supra, 665. The assent of both parties is necessary to the special provisions limiting liability of the bailee. *Maynard* v. *James,* 109 Conn. 365, 370, 146 A.2d 614 (1929); see 8 Am. Jur. 2d, Bailments § 147. There is no claim here of an express assent to such an agreement in this case. However, "an actual 'meeting of the minds' would not be required if, under all the circumstances, the plaintiff's conduct would warrant a reasonable belief that she had assented to the terms of the [warehouse receipt and work order which she received and had in her possession during the years] . . . . *Shulman* v. *Hartford Public Library,* 119 Conn. 428, 433 [177 A. 269 (1935)]; *Finlay* v. *Swirsky,* 103 Conn. 624, 633 [131 A. 420 (1925)]; *Hartford Distillery Co.* v. *New York, N.H. & H. R. Co.,* 97 Conn. 1, 6 [115 A. 488 (1921)]." *Carter* v. *Reichlin Furriers,* supra, 665; see also *Brown Bros. Electrical Contractors Co.* v. *Beam Construction Corporation,* 41 N.Y.2d 397, 361 N.E.2d 999 (1977); 1 Restatement (Second), Contracts § 21. In other words, the existence of a binding contract limiting the defendant's liability, as claimed, is not dependent upon the subjective intent of the parties. *Brown Bros. Electrical Contractors Co.* v. *Beam Construction Corporation,* supra, 399; see also *Hotchkiss* v. *National City Bank of New York,* 200 F. 287, 293 (S.D.N.Y. 1911), aff'd, 201 F. 664 (2d Cir. 1912), aff'd sub nom. *National City Bank* v. *Hotchkiss,* 231 U.S. 50, 34 S. Ct. 20, 58 L. Ed. 115 (1913). When the evidence is examined to determine whether the circumstances generated such a contract "disproportionate emphasis is not to be put on any single act, phrase or other expression, but instead, on the totality of all of these, given the

attendant circumstances, the situation of the parties, and the objectives they were striving to attain . . . ." (Citations omitted.) *Brown Bros. Electrical Contractors Co.* v. *Beam Construction Corporation,* supra, 399–400.

In this case, the trial court found that the plaintiff was unaware of the limitations of liability printed on both the warehouse receipt and the work order. There is authority for the view that even where the bailor does not sign the receipt containing the limitation of liability clause or expressly assent to its terms, he may still be bound because such acts can be deemed to be immaterial.[12] 78 Am. Jur. 2d, Warehouses § 236. Although courts have tended to recognize that limitation of liability clauses for negligence may be validly contracted for by an ordinary bailee, they have demonstrated a strong tendency to hold contracts of this type against public policy when entered into by bailees in the course of dealing with the general public. 8 Am. Jur. 2d, Bailments § 145. Such bailees, who have been termed "professional" bailees, as differentiated from "ordinary" bailees, are those who

---

[12] One annotator has observed that it is "generally recognized that the acceptance by the bailor of a warehouse receipt containing a stipulation limiting the warehouseman's liability for the goods stored makes the stipulation binding upon the parties as a term of the contract of storage if the receipt was received at the time of the storage of the goods, regardless of whether or not the bailor had actual notice of the stipulation, the reason being that under such circumstances the provisions contained in the warehouse receipt represent the contract between the parties." Annot., 160 A.L.R. 1112, 1115. The same annotator, however, notes that "[a] possible exception to this rule may be the case where the limitation clause is printed or placed on the receipt in such a way that the bailor cannot be expected to read the clause." 160 A.L.R. 1115–16; see also *Jacobson* v. *Art Storage & Moving Co.*, 16 N.Y.S.2d 906 (1939), appeal denied, 260 App. Div. 809, 22 N.Y.S.2d 928 (1940); 8 Am. Jur. 2d, Bailments § 148.

make it their principal business to act as bailees and who deal with the public largely "on a uniform and not an individual basis. . . ."[13] 8 Am. Jur. 2d, Bailments § 145; see *Miller's Mutual Fire Ins. Assn.* v. *Parker,* 234 N.C. 20, 24, 65 S.E.2d 341 (1951).

The argument against enforcing such limitation of liability clauses in most cases is that such "professional" bailees impose predetermined conditions upon bailors whose bargaining power lacks parity with such bailees. See, e.g., *Miller's Mutual Fire Ins. Assn.* v. *Parker,* supra; 2 Restatement (Second), Contracts § 208. On the other hand, recent authority also distinguishes between a bailor who possesses experience and sophistication in such matters and one who is merely a member of the public. *World Products, Inc.* v. *Central Freight Service, Inc.,* 222 F. Sup. 849, 852 (D.N.J. 1963); *Muelder* v. *Western Greyhound Lines,* 8 Cal. App. 3d 319, 332, 87 Cal. Rptr. 297 (1970). "In Connecticut provisions exculpating a bailee or limiting his liability are not necessarily a part of the bailment contract in the absence of actual knowledge of them. *Nothnagle* v. *New York, N.H. & H. R. Co.,* 139 Conn. 278, 281 [93 A.2d 165 (1952), aff'd, 346 U.S. 128, 73 S. Ct. 986, 97 L. Ed. 1500 (1953)]; *Malone* v. *Santoro,* 135 Conn. 286, 291 [64 A.2d 51 (1949)]; *Maynard* v. *James,* 109 Conn. 365, 369 [146 A. 614 (1929)]." *Carter* v. *Reichlin Furriers,* supra, 666. Under the facts of this case, the defendant warehouseman, a professional bailee, had the burden of proving actual knowledge on the part of the plaintiff or a justifiable belief on his part that she had

---

[13] "Professional" bailees have been said to include owners or proprietors of parcel checkrooms, garages, parking stations and parking lots, carriers, innkeepers, and warehousemen. See 8 Am. Jur. 2d, Bailments § 145; see also 78 Am. Jur. 2d, Warehouses § 231 et seq.

such knowledge in order to be exculpated under the limitation of liability clauses in the documents involved in this case.

The defendant does not claim that the plaintiff had actual knowledge of the limitation of liability provision but, rather, claims that her conduct would warrant a reasonable belief that she had assented to the terms of defendant's exculpatory provisions. We do not agree. The court credited, as it was entitled to, the plaintiff's testimony that she was unaware of the limitation language on the warehouse receipt as well as the work order. The fact that she received a copy of the warehouse receipt, or for that matter a copy of the work order, does not compel the result claimed by the defendant. The plaintiff, at the time of the bailment to the defendant, a professional bailee for hire, was no more than a member of the general public.

The defendant argues that the plaintiff's conversation with an employee of the defendant on the condition of various items of her property listed on the warehouse receipt fuels its claim that the evidence, when reasonably viewed, demonstrates that she assented to the limitation. This claim lacks merit. This conversation occurred when, having received the receipt after she moved to Florida, the plaintiff called the employee of the defendant whose name appeared on the receipt. She was upset because some symbols next to certain items of her property listed thereon seemed to indicate to her that "they were just battered . . . ." That conversation, including her reiteration of what the defendant's employee said to her at that time, moreover, disclosed nothing about any limitation of liability. There was no evidence that she read or was aware that the contents of that receipt con-

tained any terms other than the list of items she had stored, the symbols referred to, and the name of the employee who signed it. There was no evidence that she ever read or had knowledge of the limitation of liability language in the work order even though she signed that form.[14] The court's conclusion that the provisions seeking to limit the defendant's liability as a bailee did not become part of the bailment contract was not clearly erroneous. Practice Book § 3060D.[15]

The defendant's final claim of error attacks the amount of damages awarded to the plaintiff. In attacking the amount of the award including the valuation of the items the plaintiff claims were destroyed, the defendant maintains that the amount of the award is unsupported by the evidence. In doing so, it alleges that "the damages were not proven by the Plaintiff, and determined by the trial court, with reasonable certainty." The defendant notes that the trial court indicated that it was aware of the escalating prices of silver.[16] It also argues that, in making its final determination, the trial court valued some items of silver equally with the values "established by the Plaintiff's testimony" but that the court's valuation of other items of silver was less than that testified to by the plaintiff and such decreases were not "in any particular ratio or

[14] On at least three occasions on cross-examination, the plaintiff stated that she had no recollection of reading that language.

[15] In view of our discussion on this issue, it is apparent that we do not agree with the defendant's claim that the trial court's reliance on *Carter* v. *Reichlin Furriers*, 34 Conn. Sup. 661, 386 A.2d 647 (1977), was misplaced.

[16] We note that as to *each* of the items involving silver, the trial court, as the defendant concedes, did not attribute a value in excess of that testified to by the plaintiff. We note that no objection or comment of any sort was made by counsel at the time, or at any time during the trial when the court said: "The Court is aware of the escalating prices of silver."

proportion."[17] As to the bailed items other than the silver pieces, the defendant also alleges some values were set at the same level as the plaintiff's testimony indicated, with others set at a level less than her testimony indicated and, again, not "in accordance with any clear or standard method." On the other hand, the plaintiff, pointing out the unavailability of the bailed goods about which she testified, argues that the extent of her economic loss was presented with as much certainty as the circumstances of the case permitted and that the amount of the award should stand.[18] We agree with the plaintiff.

" 'The measure of damages for conversion of the subject-matter of a bailment, or its loss through negligence of the bailee, is the value of the property at the time of its conversion or loss, with interest from that time, such value being fixed by the terms of the contract, if any, or, in the absence of contract, the market value. *Stoll v. Judd [Co.]*, 106 Conn. 551, 560, 138 Atl. 479 [1927]; 6 Corpus Juris, 1164.' *Broderick* v. *Torkomian,* 107 Conn. 99, 100, 139 Atl. 506 [1927]." *Beaudette and Graham* v. *Tator,* 107 Conn. 712, 715, 142 A. 458 (1928).[19]

---

[17] In its memorandum of decision, the trial court set out a dollar value for each of the forty items it found the plaintiff lost because of the conduct of the bailee.

[18] The plaintiff testified that the valuation of the bailed items lost because of the bailee's conduct was $13,946. The trial court awarded her the amount of $8343. Her claims of loss covered some forty items which included among others: one sterling silver dinnerware set (tableware) service for eight, one antique wall clock, one pair of sterling silver candelabra, one five piece sterling tea set with tray, one hand crocheted double spread, six hand embroidered double sheets with pillow cases to match, and approximately two hundred books.

[19] In *Barker et ux* v. *Lewis Storage & Transfer Co.,* 79 Conn. 342, 345–46, 65 A. 143 (1906), which was an action in damages for the conversion of certain household goods left in storage with the

That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established. See *Ball* v. *T. J. Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855 (1928). "There is no unbending rule as to the evidence by which damages are to be determined, but the object of the parties ought to be attained as nearly as possible." *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 661, 345 A.2d 550 (1974); see *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323 A.2d 553 (1973); *Bartolotta* v. *Calvo,* 112 Conn. 385, 395, 152 A. 306 (1930); *Lee* v. *Harris,* 85 Conn. 212, 214, 82 A. 186 (1912). We recognize that there can be circumstances where the proof of damages may be difficult. Nevertheless, the "court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." *Bronson & Townsend Co.* v. *Battistoni,* 167 Conn. 321, 326–27, 355 A.2d 299 (1974).

Shortly after she learned of the loss, the plaintiff compiled a list of the items "that [she] could remember," the most important of which she had received as wedding gifts. During the trial she testified as to the dollar value of each of these items. Prior to her marriage, she had been a buyer in lingerie and notions for a large Hartford department store. With respect to the valuation of the silver, "linens and things . . . lingerie and things like that," there was evidence that she went to vari-

---

defendant as a warehouseman, we pointed out that the special rules of damages applicable to a conversion of household furniture and effects owned and kept for personal use applies also to books as well as any other class of household goods.

ous stores and priced comparable items.[20]   There was evidence that about two years prior to trial she inquired about the price of certain silver of similar type and quality as the sterling silver service set (tableware) with service for eight and she took "the middle-of-the-road-price" of $400 a place setting.   There was also evidence from her sister, who had run a dry goods store, who had given her a lot of the things she had stored in her hope chest which was included in the bailment to the defendant.   The plaintiff's sister was also present in the plaintiff's home in 1953 when the plaintiff was packing the goods that were taken to the defendant's warehouse.   She testified that she saw a number, but not all, of the items that were being packed. There was testimony from the sister, which was not objected to, that the values given by the plaintiff as to the dry goods items were "accurate."

---

[20] During questioning, on direct examination, about the first items on the list, i.e., a four-piece silverplated tea pot or coffee pot, sugar, creamer tray set, the following took place:

"Q:   So, you're indicating that one of the items that was in storage was a—

"A:   Four-piece silverplated tea pot or coffee pot, sugar, creamer tray set.

"Q:   Did you arrive at a value for that?

"A:   I arrived at the value only by—after having compiled this listing, going and trying to find something comparable.

"Q:   So, you went to various stores?

"A:   Right.

"Q:   In the area?

"A:   Right.

"Q:   And, you priced comparable items?

"A:   Right.

"Q:   What value did you put on that set, based on your investigation?

"A:   Well, I had put a figure here.

"Q:   What value did you—

"A:   Five hundred dollars.

"Q:   I see.   In all the other testimony we're going to be taking that is the procedure you followed?

"A:   Right."

Testimony of the value of personal property by the plaintiff who owned it was proper. *Saporiti* v. *Austin A. Chambers Co.*, 134 Conn. 476, 479–80, 58 A.2d 387 (1948) (action for damages for loss, by fire, of furniture stored in defendant's warehouse) ; see *Misisco* v. *La Maita*, 150 Conn. 680, 684, 192 A.2d 891 (1963) ; *Lovejoy* v. *Darien*, 131 Conn. 533, 536, 41 A.2d 98 (1945). The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony. *Riccio* v. *Abate*, 176 Conn. 415, 418, 407 A.2d 1005 (1979) ; *Raia* v. *Topehius*, 165 Conn. 231, 235, 332 A.2d 93 (1973) ; *Giambartolomei* v. *Rocky DeCarlo & Sons, Inc.*, 143 Conn. 468, 473, 123 A.2d 760 (1956). It is settled that the trier of fact has the right to accept part and disregard part of the testimony of a witness. *Rood* v. *Russo*, 161 Conn. 1, 3, 283 A.2d 220 (1971) ; *Desmarais* v. *Pinto*, 147 Conn. 109, 111, 157 A.2d 596 (1960) ; *Clark* v. *Haggard*, 141 Conn. 668, 674, 109 A.2d 358 (1954). " 'That a witness testified to a fact without direct contradiction is not of itself sufficient; the trial court must be the judge of the credit to be given a witness.' " *Sachem's Head Assn.* v. *Lufkin*, 168 Conn. 365, 368, 362 A.2d 519 (1975) ; see *Dombrowski* v. *Dombrowski*, 169 Conn. 85, 86, 362 A.2d 907 (1975) ; *McLaughlin* v. *Chicken Delight, Inc.*, 164 Conn. 317, 319, 321 A.2d 456 (1973). The trier is not bound by the opinion of value even where there is expert testimony. See *Investors Mortgage Co.* v. *Schiott*, 143 Conn. 61, 65, 118 A.2d 897 (1955) ; *Clark* v. *Haggard*, supra. This court cannot retry the facts or pass on the credibility of the witnesses. *Johnson* v. *Flammia*, 169 Conn. 491, 497, 363 A.2d 1048 (1975) ; *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 561, 316 A.2d 394 (1972). The items were, of course, not available, and indirect

evidence of value was all that could be offered. See *Saporiti* v. *Austin A. Chambers Co.*, supra, 479. From the very nature of the circumstances, the amount of the loss could not be proven with exactitude and all that is required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate. See *Stern & Co.* v. *International Harvester Co.*, 146 Conn. 42, 45–46, 147 A.2d 490 (1958); *Ball* v. *T. J. Pardy Construction Co.*, supra, 551. In a case such as this where the cause of the unavailability of the goods has been fixed, this serves to establish a reasonable basis in the evidence to support the trial court's award. Mindful that the plaintiff must prove her damages, we are aware that it is not enough that evidence be offered which could be credited and which, if credited, would be sufficient, because it is proof, and not merely evidence, that is required. Proof, of course, includes only evidence actually credited by the trier. See *Stern & Co* v. *International Harvester Co.*, supra, 46. We find that there was sufficient proof of damages in this case.

There is no error.

In this opinion the other judges concurred.