[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiff seeks to recover from the defendant the cost of replacement of a progressive die punch plate which the plaintiff claims was damaged in chrome-plating by the defendant.
The plaintiff conducts a tool and die manufacturing business in Connecticut. It designs and constructs metal dies of a high degree of accuracy; e.g., to a tolerance of .002".
One of its customers is Timex Corporation which makes watches. In October, 1985, Timex requested a proposal from the plaintiff for the manufacture of a progressive die, which is a die that ultimately punches out a small metal part for a watch, from a strip of steel, by means of a series of punch operations. CT Page 138
The die itself consists of three parts — a punch plate, a stripper plate to remove excess material, and the die plate. Each plate contains numerous holes, all aligned with each other.
The plaintiff thereafter negotiated a price for the completed part to be $40,778, based upon drawings prepared and approved by Timex. The plaintiff constructed the die, and sent it to Timex, for approval, in April 1986. Timex's inspection found three holes to be out of position by .002 of an inch.
The plaintiff decided the problem could by solved by drilling out the holes, and having them chrome plated. This was a process it had used before in similar situations; and the plaintiff had used the services of the defendant therein about 20 times.
On April 7, 1986, the plaintiff delivered the three parts of the die to the defendant with a purchase order requesting "Hand chrome 3 pieces," (Exh. K). The purchase order was received by the defendant on the same day. On such purchase order the defendant's general manager, Kenneth Greco, drew a sketch of the piece, identifying the area to by chromed, and added the notation "Mask all other areas." (Exh. L).
The three parts of the die were processed for plating which included wrapping in lead foil and lacquering, to avoid any chemical action on other portions. Thereafter, the parts were placed in the plating tank. Upon removal, the production manager noticed etching on the face of the punch plate, in various spots, between .0005 and .0008 of an inch.
Mr. Greco notified the plaintiff's sales manager, Robert Sherman, who came to pick up the parts, that the punch plate had suffered etching, and that it had occurred during the plating process. Greco told Sherman that the defendant was using a new machine and that the solution had eaten away the masking on the parts. Sherman inspected the punch plate (Exh. D) and observed the etching.
When the parts were returned to the plaintiff, the plaintiff's president, William Lyon, determined that the punch plate could not be used on the tool. The other two parts could be used, provided new bushings were inserted in such plates, because the bushings in the plates in solution had been damaged.
The plaintiff thereafter constructed a new punch plate, and purchased replacement bushings for the other parts. The cost of such replacement work was $17,690. as noted: CT Page 139
Grinding, milling and drilling of block $ 14,104.
Replacement bushings (Ultra) 3,430.
 Processing costs (Ultra) 156. __________ $ 17,690.
The completed die was delivered to Timex on June 12, 1986, and Timex paid the plaintiff's invoice of $40,778.
In its substituted complaint, filed October 7, 1987, the plaintiff claims, in the first count, a breach of contract in that the defendant failed to properly chrome the die as agreed upon. The second count sounds in negligence in that the defendant failed to protect the die during the plating process. These allegations are denied in the defendant's answer. The defendant also filed a special defense of assumption of the risk, and that such risk was beyond the control of the defendant and was explained to the plaintiff. This was denied by the plaintiff.
In the contract claim, the plaintiff cites Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-275 for the proposition, that, ". . . the determination of what the parties intended to encompass in their contractual commitments is the intention of the parties and an inference of fact."
The court agrees with the rationale of the plaintiff's brief that the delivery of the parts by the plaintiff to the defendant if (1) the parts were properly chromed, and; (2) the parts were returned in an undamaged condition. As to the latter issue, it is clear that the parties had a course of conduct together. As a result of an incident that occurred a year previous to the instant matter, the plaintiff designated on the purchase order the type of steel being transmitted. In the earlier incident, this was not done: the steel was destroyed in the plating process to the loss of the plaintiff. From this course of conduct, the plaintiff had a right to expect the pieces would be returned without damage. They were not.
The second count sounds in bailment. "The failure of a bailee to return goods delivered to him raises a presumption that their non-production is due to his negligence. . . . The presumption also arises whenever the bailee returns the subject of a bailment in a physically worse condition than it was when received. . . Proof of non-production or damage makes out a prima facie case of negligence on the bailee's part. . . In such a situation. . . unless the bailee proves the actual circumstances involved in the loss of the goods, the bailor should prevail. . . . Frissell v. John W. Rogers, Inc. 141 Conn. 308, 310. In that case, the goods were CT Page 140 destroyed by fire. "He (the bailee) must prove the actual circumstances connected with the origin of the fire or theft, and these involve the precautions taken to prevent the loss." I bid. 312.
There is no question that a bailment arose between the parties once the defendant's employees received the parts and the purchase order — which was dated as received by the defendant's employees. Toobert v. Turnpike Cleaners, Inc., 37 C. Supp. 849, 851.
In the instant case, the defendant has not carried its burden to prove the circumstances. The injury was alternatively attributed by the defendant's employees to a change in solution in the plating tank and to pinhole leaks in the masking. Neither such premise was proven. By failing to prove the circumstances of the loss, the defendant has failed to rebut the presumption of negligence. See Vece v. Vanacore, 2 Conn. Cir. 325, 329.
With regard to the special defense, the defendant offered no credible evidence to support any premise set forth. The plaintiff disclosed the type of steel used so as to avoid a repetition of the previous incident referred to. There was no evidence of any conversation between the representatives of the parties prior to the transaction.
The court finds the issues for the plaintiff on both counts on the issue of liability.
On the issue of damages, the plaintiff offered evidence that when the punch plate had been rebuilt, and the damaged bushings replaced, the tool was delivered to Timex and the plaintiff was paid its price in full.
The measure of damages for loss occasioned by negligence of the bailee has been held to be "the value of the property at the time of its conversion of loss, with interest from that time." Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 419. See Zalonski v. McMahon, 3 Conn. Cir. 533, 537; Hartford Electric Light Co. v. Beard, 3 Conn. Cir. 323, 324. The plaintiff may recover from the defendant the amount of $17,690. with interest from June 12, 1986 to the rate hereof at the rate of 10% per annum in the amount of $8,157.40.
In addition, on the offer of judgment filed July 30, 1987, the plaintiff may recover, as interest, at 12% from April 10, 1987 the sum of $11,695.77.
Judgment may enter in favor of the plaintiff against the defendant in the amount of $37,543.17, plus an attorney's fee of $350.
BURNS, J. CT Page 141