[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Nohad Bek brought suit against Shawmut Bank alleging the loss of $20,000.00 cash together with assorted jewelry, with a claimed value between $6,275.00 and $6,950.00. The plaintiff alleges her loss was caused by the negligence of the bank (a) in that the defendant failed to keep proper and reasonable security procedures in place for safety deposit; (b) in that the defendant failed to provide the plaintiff with two of the same keys for her safety deposit box; and (c) in that they breached their agreement to provide reasonable care in allowing access to the plaintiff's own safety deposit box.
The plaintiff testified she went to the defendant bank formerly Connecticut National Bank, the Trumbull Branch on White Plains Road, on May 11, 1991. She had closed out her safe deposit box at Connecticut Bank and Trust. She paid the $35.00 annual fee, filled out the Connecticut National Bank safe deposit bill/ticket (Exhibit A) and received the safe deposit CT Page 4022-G bank rental agreement (Exhibit B). Plaintiff was given a red envelope containing two keys for the safe deposit box (Exhibit C). She did not try these keys for the box. Bek testified she opened her safe deposit box four to six times between 1991 and 1994. The sign in sheet, defendant's Exhibit 1, indicates her entry to this safe deposit box on six occasions from May 11, 1991 to April 13, 1994. The plaintiff testified the keys she had on April 13, 1994 were the same keys she received on May 9, 1991. The plaintiff kept her safe deposit box keys in her purse although she changed pocketbooks from time to time. One key had the #149 on it and the other key had no number. Both were Mosler keys. The plaintiff said she placed three boxes of jewelry in zip lock bags which were placed in a manila envelope in the box. The jewelry which she claims was in this box is set forth on plaintiff's Exhibit D. The jewelry came to her from gifts given by various family members, and purchased in Syria. The cash consisted of $17,000.00 in $100.00 bills and $3,000.00 in $50.00 bills. On April 13, 1994, she went to Shawmut to do banking and to enter her safe deposit box. After signing in and giving her keys to the bank employee, C. Cajigus, the box was removed and handed to the plaintiff. Cajigus returned to her teller slot, the plaintiff went to a private room, opened her box and found it empty. She screamed; "Why is my box empty," and Cajigus testified the box was light but she didn't think it was empty. The plaintiff insisted the police be called and they were summoned. The two keys were tried and it was determined one of the two keys did not fit box #149.
"Where the bank leases a safe deposit box, the relationship of bailor and bailee exists as to the securities or valuables placed in such box, even though the bank has no knowledge as to the property deposited." Farnum v. Conn. Bank and TrustCompany, 22 Conn. Sup. 257, 261, 168 A.2d 168 (1960). In general the rights, duties and liabilities of the parties seem to be that the bank "holds out to the public the implied agreement that property placed in its custody will be protected, so far as reasonable human foresight will permit, from the ordinary dangers to which valuables . . . are exposed." Id. 261. However, "Parties to a bailment may generally provide by their contract of bailment for relief from liability for loss or damages . . . Griffin v. Nationwide Moving Storage Co., 187 Conn. 405,413.
The rental agreement at issue does not relieve the bank wholly against its own negligence. That agreement, entitled CT Page 4022-H Safe Deposit Box Rental Agreement, plaintiff's Exhibit B reads in part:
 Our Liability to You. We will use reasonable care in allowing access to a safe. If we don't, we will be responsible for your losses. If the contents of your safe are lost or damaged, you must prove that we were at fault. Otherwise, we will not be responsible.
Therefore, the agreement is not against public policy. The remaining issue is whether the agreement is a special contract.
A special contract is "an express or explicit contract, one which clearly defines and settles the reciprocal rights and obligations of the parties, as distinguished from one which must be made out, and its terms ascertained, by the inference of law from the nature and circumstances of the transaction." Black's Law Dictionary (5th Ed. 1979). Also, "[t]he assent of both parties is necessary to the special provisions limiting the liability of the bailee." Griffin v. Nationwide Moving Storage Co., supra, 187 Conn. 414.
Ordinarily, "[t]he failure of a bailee to return goods delivered to him raises a presumption that their nonproduction is due to his negligence." Id. 408-09. The rental agreement here eliminates this presumption and puts the burden on the bailor to prove the bank's fault or negligence. The rental agreement constitutes a special contract because it clearly establishes the parties reciprocal rights and obligations and both parties assented to these provisions.
The leading case on the issue of presumptions in Connecticut is O'Dea v. Amodeo, 118 Conn. 58, where that court stated at pg. 63: "But where the presumption involved in an issue are peculiarly within the knowledge of one party and his power to bring them before the Court, in certain instances the law deems it fit that he should have the burden not merely of offering some substantial countervailing evidence but of proving such circumstances. An illustration of such a presumption is that which aids a bailor in an action against a bailee based upon is negligence. Id., pg. 63. Further, the court stated: "In such a case, we have said that the presumption of negligence makes out a prima facie case: which may be overcome by the bailee by any explanation which shall satisfy the trier that the loss was not due to his failure to exercise reasonable care in CT Page 4022-I the custody of the goods." Id., pg. 63. ". . . if the defendant proves those circumstances, then the burden of showing that upon the whole case he was negligent rests upon the plaintiff." Id., p. 63. The testimony of the plaintiff clearly indicated she had no difficulty with opening the safe deposit box prior to April 9, 1994. The evidence reflects that the plaintiff, Nohad Bek was the only person to use this box as evidenced by defendant's Exhibit 1 (access record). The plaintiff also testified she removed some of her jewelry on December 23, 1991 and returned it to the box on her next entry on June 24, 1993. She also stated on cross-examination that she had no idea what procedures the bank failed to follow. The investigating police officer, Thomas Richard when asked on cross-examination if he was aware of any procedures that the bank violated and he testified he had no knowledge of any such violation. Laurie Farrell, the assistant manager of the Trumbull branch of Shawmut testified some keys have a number on them and some do not have a number. Further, there was no evidence that anyone else had a key to the plaintiff's box. It is noteworthy that the plaintiff by her own testimony stated that she was the only one that possessed the keys to the box during the three year period immediately proceeding the claimed loss. Also, she had entered the box four or five times with no difficulty prior to the claimed loss. The testimony indicated there were no employees of the bank terminated for dishonesty during this time frame. Also, the bank tried to trace the wrong key through Mosler without success. This court finds that upon all the circumstances that the bank used proper care, and the plaintiff did not prove by a fair preponderance of the evidence the facts of the deposit or the breach of the defendant's contract. A plaintiff prevails "because of the strength of his own" case. Farnum v.Connecticut Bank Trust Co., 22 Conn. Sup. 257, 263,168 A.2d 168 (1960). Proof of non-production makes out a prima facie case; the bailee must then prove the actual circumstances; and thereafter, the burden on the whole case is upon the bailor. Id., p. 262-263.
The plaintiff has also raised the doctrine of res ipsa loquitur. . . ."[I]t permits the jury to infer negligence when no direct evidence of negligence has been introduced. . . The doctrine neither creates a presumption in favor of the plaintiff nor shifts the burden to the defendant, but merely permits the inference of negligence to be drawn from the circumstances of the incident." Giles v. New Haven, 30 Conn. App. 148, 150,619 A.2d 476 (1993). The doctrine of res ipsa loquitur does not CT Page 4022-J provide a presumption or a shift of the burden. This doctrine does not apply in this case.
In this case, the bailee's liability was limited by the rental agreement. The rental agreement entered into between the parties provided that the burden is on the plaintiff to show that the bank failed to exercise reasonable care. "It is fundamental jurisprudence that parties are free to contract for whatever terms they may agree on." M L Building Corp. v.Housing Authority, 35 Conn. App. 379, 381, 646 A.2d 244 (1994).
The court finds the issues in favor of the defendant and judgment may enter accordingly.