[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY REEL ICE, INC.
In this three count revised complaint dated May 11, 1999, Christopher Connors alleges negligence by Reel Ice Inc. (count one), ETR Enterprises, LLC (ETR) (count two), and Eric Sergal (count three), arising out of a collision between Connors and Sergal in a hockey game at Enfield Twin Rinks on April 24, 1996.
Connors and the defendant, Sergal, participated on different teams in a noncheck men's adult hockey league. On that date their two teams faced off in a playoff game which proved to be very competitive. During the game, Conners pursued a loose puck along the boards when Sergal checked Conners into the boards causing serious injury to his shoulder. The defendant, Reel Ice, is alleged to be the owner and operator of the Enfield Twin Rinks.
On December 16, 1999, Reel Ice and ETR filed this motion for summary judgment as to counts one and two, respectively, on the grounds that the plaintiff signed valid waiver and release form releasing the defendants from liability and that Connecticut law bars negligence claims between CT Page 8798 co-participants in adult team contact sports. On March 6, 2000, this court granted a prior motion for summary judgment by ETR on a separate ground of lack of ownership leaving only the claim for summary judgment by Reel Ice as to count one. Count one alleges that Reel Ice, as the owner or possessor of the premises known as the Enfield Twin Rinks, was negligent in allowing Sergal to participate in the men's hockey league and by failing to take precautions to adequately protect the plaintiff from potentially dangerous players.
 I.
The first ground claimed by Reel Ice, is based on its special defense alleging waiver of liability by plaintiff. The waiver in question signed by Connors on October 24, 1995 is entitled "AMATEUR ATHLETIC WAIVER AND RELEASE OF LIABILITY" and reads as follows:
"In consideration of being allowed to participate in any way in Enfield Twin Rinks Operating Co., Inc. athletic/sports programs, and related events and activities, the undersigned:
1. Acknowledge and fully understand that each participant will be engaging in activities that involve risk of serious injury, including permanent disability and death, and severe social and economic losses which might result not only from their own actions, inaction or negligence of others, the rules of play, or the condition of the premises or any equipment used. Further, that there may be other risks not known to us or not reasonably foreseeable at this time.
2. Assume all the foregoing risks and accept personal responsibility for the damages following such injury, permanent disability or death.
3. Release, waive, discharge and covenant not to sue Enfield Twin Rinks Operating Co., Inc. its affiliated clubs, other participants, sponsoring agencies, sponsors, advertisers, and if applicable, owners and leasers of premises used to conduct events, all of which are hereinafter referred to as `releasees', from demands, losses or damages on account of injury, including death or damage to property, caused or alleged to be caused in whole or in part by the negligence of the releasees or otherwise.
THE UNDERSIGNED HAVE READ THE ABOVE WAIVER AND RELEASE, UNDERSTAND THAT THEY HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT AND SIGN IT VOLUNTARILY."
Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and CT Page 8799 that the moving party is entitled to judgment as a matter of law. Our Supreme Court has not yet ruled upon whether or not a waiver of negligence claims, by an adult participant in an athletic event, can be enforced. Lombardo v. Maguire Group Inc., Superior Court, judicial district of Middlesex at Middletown, Docket No. 077767 (June 6, 1997,Arena, J.) while contract provisions which relieve a person from his own negligence are generally not favored in our courts. Such provisions, however, have been upheld under proper circumstances. Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 413, 446 A.2d 799
(1982). Moreover, it is generally recognized that agreements exempting owners and operators of sports facilities from liability for negligence entered into with patrons of the facility are valid and enforceable against a patron. Bashura v. Strategy Plus, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 050871 (November 20, 1997, Corradino, J.) (21 Conn.L.Rptr. 59).
The plaintiff opposes summary judgment claiming that the waiver and release relied upon by Reel Ice is insufficient to exempt defendants from liability because it does not specifically alert the plaintiff that he is releasing all claims against Reel Ice, including Reel Ice's own negligence, citing Bashura, supra, 21 Conn.L.Rptr. 59.
In Bashura, the court focused on the content of the waiver and release agreement and ruled that "[i]t imposes no great burden on sports facilities engaged in high risk activities to require that their exculpatory agreements include language that explicitly states that the patron, if injured, waives any claim he or she might have against the operator of the facility even though the injury was caused by the operator's negligence." Id., 63. Based on this rule, the court denied the operator's motion for summary judgment because "[t]he waiver agreement made no explicit reference to the operator's negligence." Id.
Unlike the waiver agreement in Bashura, the agreement in the present case makes explicit reference to Reel Ice's negligence. The language of the release in the present case releases specified parties "from demands, losses or damages on account of injury, including death or damage to property, caused or alleged to be caused . . . by thenegligence of the releasees . . . ." It specifically states that the participant is releasing all of the involved parties from liability for damages resulting from the negligence of those parties, including the operator. of the Enfield Twin Rinks. This language is more than sufficient to alert any participant that he is releasing Reel Ice from liability for its own negligence.
Because the plaintiff was presented the waiver by his team captain and was required to sign just prior to being allowed on the ice, he argues CT Page 8800 that he was unaware of the rights that he was giving up. However, there does not appear to be a material question of fact as to whether the plaintiff was conscious of the rights he was waiving. The general rule in our state is that where a person who is of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is that person's duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so. Phoenix Leasing, Inc. v. Kosinski, 47 Conn. App. 650,654, (1998). The plaintiff had played in seven previous leagues and was an experienced adult league hockey player. The waiver form was a prerequisite each time the plaintiff played in one of these leagues. Moreover, there was no inequity of bargaining power between plaintiff and rink owner because the plaintiff was free to play at another rink or not to play at all.
The language and the title of the five paragraph release is unambiguous and above the plaintiff's signature contains language clearly putting the plaintiff on notice that he is giving up substantial rights.
Based on the analysis of the above facts, the release at issue in the present case is sufficient to relieve Reel Ice of liability and it is unnecessary to consider the second ground alleged in favor of this motion.
The motion for summary judgment by Reel Ice is granted.
 Wagner, J. TJR