******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD PALKIMAS *v.* OSCAR FERNANDEZ ET AL.
(AC 36548)

DiPentima, C. J., and Mullins and Bear, Js.

*Argued April 7—officially released August 4, 2015*

(Appeal from Superior Court, judicial district of Fairfield, Radcliffe, J.)

*Richard H. G. Cunningham*, for the appellant (plaintiff).

*Robert D. Laurie*, with whom, on the brief, were *Heather L. McCoy* and *Shrina B. Faldu*, for the appellee (defendant Nationwide Insurance Company of America).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Richard Palkimas, appeals from the judgment of the trial court rendered in favor of the defendant Nationwide Insurance Company of America.[1] On appeal, the plaintiff claims that the court improperly (1) determined that the defendant was not liable for the alleged negligence of Hygenix, Inc., and ServPro, which were independent contractors, and (2) found that the defendant did not cause damage to the plaintiff's property. We conclude that the court's finding of a lack of proximate cause is not clearly erroneous.[2] Accordingly, we affirm the judgment of the court.[3]

The memorandum of decision of the court set forth the following relevant facts. The plaintiff owned a home located at 350 Soundview Avenue in Stamford (house). In January, 2006, the plaintiff hired Oscar D. Fernandez "to restore windows in the house, perform exterior and interior painting, and lead pain[t] encapsulation." At the time, the defendant was Fernandez' insurance carrier. In September, 2006, near the end of the renovation, an "unknown person" used a disconnected toilet, which resulted in water and waste flooding various rooms of the house, causing substantial damage.

Hygenix, Inc., and ServPro—both independent contractors—were hired to remediate the flooded area. During the remediation process, the heat to the house was turned off. At trial, the plaintiff claimed that the defendant ordered the heat turned off. The defendant, however, insisted that it never made such request and, moreover, that it was the plaintiff who had ordered the heat turned off.

Once the remediation was finished, the plaintiff returned to the house and discovered damage to the horsehair plaster walls.[4] Specifically, the plaintiff observed cracks in the walls and found the walls soft to the touch. Afterward, the plaintiff ascertained that most of the plaster keyways had been broken.[5] The plaintiff claimed that turning off the heat damaged the horsehair plaster walls by exposing the walls to freezing winter temperatures and moisture. The defendant maintained that neither the temperature during the winter of 2006 to 2007 nor the moisture in the house caused the damage to the horsehair plaster walls.

On January 27, 2009, the plaintiff commenced this action with a three count complaint. On March 22, 2013, the plaintiff withdrew the action as to Fernandez and Oscar Painting Contractor, LLC. On June 10, 2013, the plaintiff filed an amended complaint alleging that the defendant was negligent because it "should have provided for an alternative source of heat to prevent the fracturing and shattering of plaster . . . should have assured that the remediation was being done in an expeditious fashion instead of prolonging the process

allowing the property to be exposed to freezing temperatures for excessive periods of time . . . [and] failed to appreciate the dangers inherent in allowing a home of this nature to be subject to freezing temperatures for prolonged periods of time." The defendant filed its answer and special defenses on June 12, 2013, denying the claim of negligence.

A trial to the court began on June 17, 2013, and lasted four days. On January 2, 2014, the court rendered judgment in favor of the defendant. Specifically, it found that the defendant was not in control of the independent contractors and that the plaintiff failed to prove proximate causation. This appeal followed. Additional facts will be set forth as necessary.

The dispositive issue in this appeal is whether the court properly found that the plaintiff failed to establish proximate causation. In his appellate brief, the plaintiff argues that the court improperly determined that the opinion of the plaintiff's expert witness was unpersuasive because his conclusions were unverified by "any scientific experiments or tests at the [house] . . . ." The defendant, however, asserts that the court, as trier of fact, properly weighed the competing experts' testimony as to proximate causation and correctly found that the plaintiff failed to prove proximate causation. We conclude that the trial court's finding was not clearly erroneous.

We begin with the standard of review, which is contested by the parties. The plaintiff seeks a plenary review, while the defendant asserts that our review is subject to the clearly erroneous standard. We agree with the defendant. The court found that the plaintiff failed to prove that the damage to the horsehair plaster walls was proximately caused by the failure to heat the premises during the remediation process. "Proximate cause is ordinarily a question of fact." (Internal quotation marks omitted.) *Gurguis* v. *Frankel*, 93 Conn. App. 162, 168, 888 A.2d 1083, cert. denied, 277 Conn. 916, 895 A.2d 789 (2006).

"Our standard of review concerning a trial court's findings of fact is well established. If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Further, a court's inference of fact is not reversible unless the inference was arrived at unreasonably. . . . We note as well that [t]riers of fact must often rely on circumstantial evidence and draw inferences from it. . . . Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Moreover, it is the

*exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . .* Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Emphasis in original; internal quotation marks omitted.) *Stein* v. *Tong*, 117 Conn. App. 19, 24, 979 A.2d 494 (2009).

The elements necessary to prove an action for negligence are well established: "duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails. . . . [I]n a negligence action . . . [a] causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case . . . . To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause . . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendant's conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise." (Citation omitted; internal quotation marks omitted.) *Gurguis* v. *Frankel*, supra, 93 Conn. App. 167–68.

At trial, the plaintiff presented Barry Nelson, a professional engineer, as his expert witness. Nelson conceded that when he inspected the damaged walls in early 2007, he did not take notes, did not measure the cracks, did not take moisture readings, did not investigate the weather during the relevant time, and did not research the "antique type of plasters in connection with this case." Furthermore, Nelson conceded that he was "not a plaster expert" and that he had never worked with or applied horsehair plaster. Nelson did testify, however, to "basic engineering principles," namely, the "effects of freezing on solid and liquid materials," as well as the impact of "weather and stress on various materials." It was Nelson's opinion that the keyways had been broken because of a combination of freezing temperatures and humidity. Thus, it was Nelson's conclusion that the lack of heat during the remediation process caused the damage to the horsehair plaster walls.

The defendant presented Peter Lord, as an expert in the restoration and protection of historic buildings. Lord testified that he had more than twenty-five years of experience in plaster restoration, specializing in the preservation and restoration of historic surfaces. Lord also testified that his experiences with horsehair plaster walls included recreating, stabilizing, reattaching, and fixing cracks. In connection with this case, Lord reviewed the following items: the complaint; the plaintiff's answers to interrogatories; Nelson's deposition; the weather for the area during the relevant time; the mold remediation documents; photographs of the cracked horsehair plaster walls; and a video that had been offered into evidence by the plaintiff. Significantly, Lord testified that freezing temperatures do not affect horsehair plaster and, in his experience, he had never seen freezing temperatures cause horsehair plaster walls to crack or keyways to break. Lord further testified that moisture does not affect horsehair plaster walls because the walls are very porous. Lord stated that he had seen frost on plaster walls without causing damage to the walls. Moreover, Lord testified that it would take a significant amount of water to cause the wood laths to swell up and in turn break the keyways. In this case, Lord opined that the moisture produced from the sewage discharge could not have caused the damage alleged by the plaintiff because the flooded area was isolated and the amount of water was insufficient to cause the wood laths to swell up.[6]

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002); see also *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 422, 446 A.2d 799 (1982) (citing cases asserting that trial court, as trier of fact, is afforded discretion with respect to witness testimony).

It was within the province of the court to find the defendant's expert credible and, in contrasting Lord's vast experience with horsehair plaster against Nelson's lack of experience, the court was well within its role as the trier of fact to accord more weight to Lord's testimony. On the record before us, the court reasonably could have rejected Nelson's opinion that cold temperatures, coupled with moisture, caused the damage to the horsehair plaster walls. See *United Technologies Corp.* v. *East Windsor*, supra, 262 Conn. 26. Moreover, as the trier of fact, the court was well within

its province to discount Nelson's conclusion because, as it found, those "conclusions were not verified by any scientific experiments or tests at the [house] . . . ." Ultimately, the court found that the plaintiff "failed to prove that the damage to the horsehair plaster . . . was proximately caused by the failure to properly hea[t] the premises during the remediation process." The court's findings were supported by the evidence and not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The other defendants named in the plaintiff's complaint were Oscar D. Fernandez, doing business as Oscar Painting Contractor, and Oscar Painting Contractor, LLC. On March 22, 2013, the plaintiff withdrew the action as to these defendants, and they are not part of this appeal. Our references to the defendant are to Nationwide Insurance Company of America.

[2] Because our resolution of the plaintiff's proximate cause claim is dispositive of the appeal, we do not reach the plaintiff's first claim.

[3] In its appellate brief, the defendant presented two issues for our consideration in the event we reversed the judgment and remanded the case for a new trial. First, the defendant argued that the court improperly admitted a video into evidence showing the horsehair plaster walls and broken keyways. Second, the defendant claimed that the court improperly declined to sanction the plaintiff for the intentional spoliation of evidence. Because we affirm the court's judgment, we do not address these issues.

[4] The plaintiff's expert, Peter Lord, explained that horsehair plaster walls are a mixture of lime, horsehair, and sand plaster. The lime is so soft that it relies on the sand for "density and integrity," while the horsehair serves to link the lime and the sand onto the wood laths. A lath is a "thin narrow strip of wood nailed to . . . studding" and is used as a base for plaster. Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). Walls made from horsehair plaster, according to Lord, are a very old method that "faded out around 1920" in this area.

[5] As testified by Lord, keyways are formed when the plaster is coated onto the wood laths and are used to keep the plaster in place.

[6] Lord was unable to reach an opinion with a reasonable degree of probability as to what had damaged the horsehair plaster walls. In the summer of 2012, the plaintiff removed the horsehair plaster walls and discarded the materials, rendering it impossible for Lord to inspect the walls.

_____